UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
PETER VROOM,

          Plaintiff,                HONORABLE JOSEPH E. IRENAS

     v.                             CIVIL ACTION NO. 11-3897
                                         (JEI/KMW)
AMERIQUEST TRANSPORTATION
SERVICES and BROWN                        OPINION
NATIONALEASE,

          Defendants.
```

**APPEARANCES:**

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Mark A. Rosen, Esq.
1300 Mount Kemble Avenue
PO Box 2075
Morristown, NJ 07962
    Counsel for Plaintiff

DILWORTH PAXSON LLP
Erin Galbally, Esq.
James J. Rodgers, Esq.
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
    Counsel for Defendants

**IRENAS**, Senior District Judge:

    This tortious interference suit comes before the Court on Defendants Ameriquest Transportation Services ("AMQST") and Brown NationaLease's ("BNL") motion for summary judgment.[1] (Dkt.

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are completely diverse.
    Defendants had moved for sanctions against Plaintiff and Plaintiff's counsel in conjunction with the instant motion, (Dkt. No. 43), however

1

No. 38) Plaintiff Peter Vroom was dismissed by his former employer, Truck Renting and Leasing Association ("TRALA"), and alleges that Defendants' executives conspired to, and succeeded in, wrongfully bringing about his dismissal. Defendants argue summary judgment is necessary because Plaintiff has failed to produce any evidence of unlawful conduct. For the reasons outlined below, the Court will grant Defendants' motion.

**I.**

From November 2001 until July 8, 2009, Plaintiff served as President and Chief Executive Officer of TRALA, a national nonprofit trade association providing legislative advocacy to the truck renting and leasing industry. The association is dependent upon membership dues and sponsorship revenue to support its activities. (Vroom Aff. ¶ 11)

Defendant AMQST is a for-profit corporation providing fleet management services to independent truck companies. (Defs.' Stmts ¶ 8; Pl.'s Stmts ¶ 8)[2] AMQST is itself a member of TRALA, and Doug Clark ("Clark"), its Chief Executive Officer, previously served on the Board of Directors of TRALA. (Pl.'s Stmts ¶ 9)

---

withdrew the motion at oral argument. See Transcript of January 17, 2014 Hearing.
[2] The Court refers to each side's statements of material facts with the abbreviated reference of "Defs.' Stmts" and "Pl.'s Stmts."

In December 2006, AMQST acquired NationaLease Purchasing Corporation ("NPC"), a for-profit corporation that operates the equipment purchasing program for National Truck Leasing Association ("NTLA" or "NationaLease"), a nonprofit trade association comprised of independent truck lessors operating throughout North America. (Vroom Aff. ¶ 3) Up until one month prior to Vroom's dismissal, NTLA was itself a member of TRALA. (Ford Aff. ¶ 15)

NTLA members purchase truck parts and supplies from NPC, use the NationaLease trademark in advertising, and receive roadside assistance from fellow member companies.[3] (Defs.' Stmts ¶ 15) NTLA members comprise an important subset of TRALA's membership.

Defendant BNL is an independent truck leasing company and a member of NTLA. (Defs.' Stmts ¶¶ 12, 13) Thomas Brown ("Brown") is the President of BNL, serves as Chairman of the Board of Directors for NTLA, and, like Clark, was formerly a member of TRALA's Board of Directors. (Defs.' Stmts ¶ 17)

As part of AMQST's purchase of NPC, AMQST and NTLA entered into a management agreement in which AMQST assumed complete operational control of NTLA. (Defs.' Stmts ¶ 14; Opp'n Br. at

---

[3] Membership in NTLA is one way in which independent truck lessors are able to compete with the nationwide brands such as Ryder and Penske that dominate the market. (Opp'n Br., Ex. 18 (Jonathan S. Reiskin, *AmeriQuest to Merge with NationaLease*, Transport Topcis, Oct. 16, 2006 at 65.))

4; Pl.'s Stmts ¶ 8) Although NPC and NTLA do not have a direct corporate relationship, "most of the NTLA member companies were shareholders of NPC." (Opp'n Br. at 4)

Following the merger, AMQST began using NTLA to compete with TRALA, a development Vroom believed created a conflict of interest for Clark and Brown, as both were Directors of TRALA and held leadership positions with AMQST/NTLA. (Vroom Aff. ¶¶ 31-32) His concern intensified when AMQST began holding NTLA conferences at times that conflicted with TRALA's, thereby diverting TRALA revenue.[4] (Vroom Aff. ¶¶ 22-26)

In an attempt to resolve the parties' concerns, TRALA held a meeting in February 2009 in Orlando, Florida with Vroom, Brown, and several NTLA representatives. (Defs.' Stmts ¶ 26) Vroom addressed his conflict of interest concerns and suggested that NTLA change its leadership—a suggestion quickly rebuffed. (Defs.' Stmts. ¶ 30) Vroom subsequently launched into an expletive-laden tirade, for which he apologized the following day. (Defs.' Stmts ¶¶ 32-33) TRALA's counsel circulated a memorandum following the meeting restating Vroom's concerns. (Opp'n Br., Ex. 24)[5]

---

[4] Vroom also began receiving reports from industry suppliers that AMQST was pressuring them to transfer their financial support from TRALA to NTLA and/or AMQST. (Vroom Aff. ¶ 28)

[5] TRALA's counsel, Richard P. Schweitzer, Esq., wrote:
> [I]t is my opinion that NTLS has business interests that are in direct competition with many of TRALA's core activities, and NTLS's pursuit of its interests has generated and is likely to continue

4

Following the meeting, Clark spoke with other AMQST Board Members about seeking Vroom's dismissal. (Vroom Aff. ¶ 42; Riha Aff. ¶¶ 29-30) Clark proposed informing the Chairman of TRALA that AMQST would leave TRALA if Vroom was not dismissed. (Id.)

On March 5, 2009, NTLA circulated a memorandum to its members stating the NTLA Board of Directors had voted to resign from TRALA effective March 31, 2009. (Defs.' Stmts ¶ 38) The memorandum did not reference Vroom, although it did state the resignation was due to a "controversy" the parties were unable to rectify. (Id.)

On March 9, 2009, TRALA's counsel disseminated a response, stating TRALA "remain[s] very concerned about the impact on TRALA . . . by certain AMQST/NTL[A] representatives." (Opp'n Br., Ex. 47)

On March 25, 2009, representatives of NTLA met with TRALA's Board of Directors at the Dallas-Fort Worth Airport to again address the situation. (Defs.' Stmts ¶ 46) During the meeting, representatives of NTLA, including Clark and Brown, "explained the concerns they had with Vroom's performance . . . [and] explained that NTL[A] intended to resign from TRALA if it

---

generating substantial competitive harm to TRALA. Thus, any member of TRALA's Board of Directors who also serves as an officer or director of NTLS or its owner or affiliates would appear to have a conflict of interest that should be addressed by revising TRALA's Board policies.
(Opp'n Br., Ex. 24)

continued to employ Vroom." (Vroom Aff. ¶ 52)  NTLA agreed to extend its membership on a monthly basis.  (Defs.' Stmts ¶¶ 42, 43)

With Vroom's dismissal not forthcoming, NTLA resigned from TRALA effective June 1, 2009.  (Defs.' Stmts ¶ 48)

Between June 15 and June 30, 2009, Clark and others asked staff members to make phone calls to each of the NTLA members to convince them not to remain in TRALA as independent members in light of NTLA's resignation.  (Riha Aff. ¶ 29)

Vroom was terminated July 8, 2009.  (Defs.' Stmts ¶ 51)  At the time, neither AMQST, BNL, nor NTLA were affiliated with TRALA.  (Defs.' Stmts ¶ 51)

Soon after his dismissal, Plaintiff commenced a bevy of actions against several different defendants before the American Arbitration Association, Virginia state court, and the District of New Jersey.[6]

---

[6] Plaintiff first filed an arbitration against TRALA before the American Arbitration Association ("AAA"), alleging breach of contract and wrongful termination.  (Defs.' Stmts. ¶ 62)  Plaintiff then sued Brown and Clark in Virginia State Court, alleging that the two conspired to tortiously interfere with his employment and defame him.  (Defs.' Stmts ¶ 63)
    The court dismissed the action, holding that Vroom was required to arbitrate those claims with the ongoing AAA arbitration because TRALA was an indispensable party.  (Id. ¶ 64)  After his motion for reconsideration was denied, Plaintiff filed a second arbitration against Brown and Clark, and added the instant corporate defendants, BNL and AMQST.  (Defs.' Stmts ¶ 65)
    The corporations moved to dismiss the newly filed arbitration on the grounds they were not parties to a contract requiring arbitration nor defendants in the dismissed Virginia state court action.  (Defs.' Stmts ¶ 68) Vroom consented to the dismissal and consequently filed his initial complaint in the instant action.  (Dkt. No. 1)

Plaintiff filed the instant Amended Complaint August 30, 2011, (Dkt. No. 3), and Defendants moved to dismiss December 29, 2011. (Dkt. No. 12) Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) on *res judicata* grounds was denied with prejudice. (Dkt. No. 18) Defendants' motions to dismiss under Rules 12(b)(2) and 12(b)(3) were denied without prejudice. (Id.)

During discovery, Vroom sought "written discovery" but did not notice any depositions. (Br. for Sanctions at 8) After the close of discovery, Defendants brought the instant motion.

**II.**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable

---

AAA consolidated Vroom's claims against TRALA, Brown, and Clark, on August 30, 2011. (Defs.' Stmts ¶ 71) With the instant action pending, Vroom moved to dismiss the arbitral claims without prejudice. (Defs.' Stmts ¶ 74) Arbitrator M. Bruce Wallinger denied the motion. (Nov. 22, 2011 Wallinger Order at 3-4) Wallinger directed Vroom to dismiss Clark and Brown from the arbitration with prejudice or present his tortious interference claim in arbitration. (Defs.' Stmts ¶ 76) Vroom consequently moved to dismiss with prejudice all claims against Clark and Brown on December 14, 2011, and the individuals were dismissed the next day. (Defs.' Stmts ¶ 78)

To the Court's knowledge, Vroom has not been successful on a single action.

7

to the non-moving party.  Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  Conoshenti v. Public Serv. Elec. & Gas, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting Celotex, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 249.

## III.

To prevail on a claim for tortious interference with an existing contractual relationship, a plaintiff must prove: (1) an existing contractual relationship; (2) defendants' knowledge of both the existing contractual relationship and plaintiff's reasonable expectation of economic benefit; (3) intentional interference; (4) the malicious nature of the intentional interference; and (5) actual damages resulting from the

interference. Printing Mart-Morristown v. Sharp Electronics Corp., 563 A.2d 31, 37 (1989).[7]

Defendants argue that Vroom has failed to produce any evidence probative of malicious interference. The Court agrees.

Plaintiff contests that Defendants interfered by "us[ing] economic threats" consisting of "withdrawal and cessation of significant financial benefits" to "try and influence TRALA members to terminate plaintiff." (Opp'n Br. at 12) Plaintiff adds that such threats, combined with Defendants' competition with TRALA through NTLA, renders their conduct unlawful.

Yet Plaintiff cites no legal authority to support his conclusion of unlawfulness, and the vast weight of New Jersey precedent requires holding otherwise.

When determining whether a defendant's interference was sufficiently wrongful, New Jersey courts look to both the subjective intent of the alleged tortfeasor and the means utilized. Lamorte Burns & Co., Inc. v. Walters, 167 N.J. 285, 306-07 (2001). The conduct, taken as a whole, must be both "injurious and transgressive of generally accepted standards of common morality or of law." Harper-Lawrence Inc., v. United Merchants and Mfrs., Inc., 261 N.J.Super. 554, 568 (App. Div.

---

[7] The parties agree that there is no "discernable material difference" between the laws of New Jersey and Virginia and that New Jersey law should apply. (Br. at 18, n. 79; Opp'n Br. at 10, n. 2)

1993); Lamorte Burns & Co., 167 N.J. at 306 ("Often it is stated that the relevant inquiry is whether the conduct was sanctioned by the 'rules of the game,' for where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury.") "[I]n tortious interference cases involving parties in direct competition in the same market, the line [of illegality] must be drawn where one competitor interferes with another's economic advantage through conduct which is fraudulent, dishonest, or illegal." Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc., 282 N.J.Super. 140, 205 (App. Div. 1995).

Nothing in the instant record is probative of such wrongful conduct.

Rather, the record indicates that Defendants were important members of TRALA who were disturbed by Vroom's interference in AMQST and NTLA operations. Leveraging their influence within the association, they sought and advocated for a change in TRALA leadership, threatening to leave if a change was not made. When such change was not forthcoming, they resigned. Their "economic threats" consisted of withholding their own dues, a threat they were well within their rights to make.

Such conduct simply does not transgress "generally accepted standards of common morality or of law." Harper-Lawrence Inc., 261 N.J.Super. at 568; cf. Zippertubing Co. v. Telflex Inc., 757

F.2d 1401 (3d Cir. 1985) (finding tortious interference where defendants misappropriated information of a nearly completed transaction for their own benefit and to the exclusion of plaintiff).

Even if the Court were to assume that Defendants succeeded in bringing about Vroom's dismissal by a nefarious abuse of Clark and Brown's positions with TRALA, an assumption unsupported by Plaintiff's evidence, the record indicates that the two had resigned from TRALA prior to Vroom's dismissal. (Defs.' Stmts ¶ 51; Pl.'s Stmts ¶ 51[8]) Consequently, it is clear that the cause of Vroom's dismissal was TRALA's desire to appease AMQST and NTLA, not the breach of Clark and Brown's fiduciary duties.

In sum, Defendants voiced their displeasure with Vroom, sought his dismissal, and exited TRALA when his dismissal was not forthcoming. See generally A.O. Hirschman, Exit, Voice, and Loyalty (1970). This is conduct the law clearly allows.

---

[8] In his response to Statement ¶ 51, Plaintiff wrongfully attempts to use a filing of Clark and Brown's in the Virginia state court action as an affirmative admission of liability—an attempt the Court rejects.
    As noted supra, Clark and Brown successfully moved to dismiss Vroom's Virginia state court action. (See Opp'n Br., Ex. 3) As is required at the motion to dismiss stage, Clark and Brown's moving brief therein recited the facts alleged by Plaintiff in his complaint. (Id. at 2-3) In his opposition brief to the instant motion, Vroom cited this recitation as evidence of unlawfulness. (Pl.'s Responses ¶ 51 ("[I]n papers submitted in Alexandria, Virginia Circuit Court, Clark and Brown affirmatively stated that they participated in ending Vroom's employment with TRALA." Statement of Facts, pages 2-3) The Court rejects Plaintiff's efforts to both misstate Defendants' writings and deceive the Court.

Accordingly, Defendants' summary judgment motion will be granted.[9]

**IV.**

For the reasons stated above, Defendants' motion for summary judgment will be granted. An appropriate order accompanies this opinion.

Date: January _23_, 2014

__/s/ Joseph E. Irenas_____

**Hon. Joseph E. Irenas**
**Senior United States District Judge**

---

[9] Because Plaintiff's substantive cause of action is dismissed, the ancillary claim of conspiracy is also dismissed. Sandone v. Diana, 2012 WL 5869580, *3 (N.J.Super.A.D. Nov. 21, 2012) (affirming the Law Division's dismissal of civil conspiracy because "there [wa]s no independent cause of action against" defendants).